IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

MICHELLE J. PALMER and :
MICHAEL M. CANTRELL, :
individually and on behalf of :
all similarly-situated Individuals, :
 :
    Plaintiffs, :
 : Civil Case No.
v. : 7:10-cv-145 (HL)
 :
CONVERGYS CORPORATION, :
and CONVERGYS CUSTOMER :
MANAGEMENT GROUP INC., :
 :
    Defendants. :
_____

# ORDER

Before the Court are Plaintiffs' Motion to Proceed as a Collective Action (Doc. 42) and Defendants' Motion to Strike the Plaintiffs' Collective Action Allegations (Doc. 53). For the reasons stated below, the Defendants' Motion to Strike is granted, and as a result, the Plaintiffs' Motion to Proceed as a Collective Action (Doc. 42) is deemed moot.

## I. Factual Background

Plaintiff Michelle J. Palmer and Plaintiff Michael M. Cantrell (collectively, "Plaintiffs") are former employees of Defendants Convergys Corporation and Convergys Customer Management Group Inc. (collectively, "Defendants"). Plaintiffs were employed by Defendants as Customer Service Representatives ("CSRs") at a Valdosta call center where they communicated with Defendants'

clients over the telephone to provide customer service and sales support. (Cantrell Declaration ¶ 2; Palmer Declaration ¶ 2.) Plaintiff Palmer was employed from July 2007 until April 2008, when she became ill and was unable to continue working. (Palmer 8.) Plaintiff Cantrell was employed by Defendants from July 2007 until August 2010. (Cantrell 30.)

When Plaintiffs applied to work for Defendants, they each completed and signed an employment application. The application was approximately four pages long.[1] The first page asked applicants for basic information including name, social security number, telephone number, and address. The second page inquired into the applicant's criminal history and employment record. The third page allowed applicants to list any education or military service, as well as other activities and special skills.

An underlined heading appeared at the bottom of the third page. The heading was printed in bold, capital letters and read "**AS AN APPLICANT YOU AGREE TO AND UNDERSTAND THE FOLLOWING**". (Doc. 53-2, p. 3.) Below the heading was a list of ten provisions addressing a variety of subjects including mandatory drug testing, the possibility of having to travel with the job, and signing non-compete or non-disclosure agreements. Id.  The list of provisions took up the entire fourth page of the application. Included as the ninth provision in the list was a class action waiver that stated

---

[1] The length of each application varies based on the amount of text the applicant submits. The description here is based on Plaintiff Cantrell's application. (Doc. 53-2, p. 1-4.)

> I further agree that I will pursue any claim or lawsuit relating to my employment with Convergys (or any of its subsidiaries or related entities) as an individual, and will not lead, join, or serve as a member of a class or group of persons bringing such a claim or lawsuit.

(Doc. 53-2, p. 4.) Directly below the list of provisions, another statement appeared in capital, bold letters that stated **"I HAVE READ CAREFULLY, HAD THE OPPORTUNITY TO ASK QUESTIONS ABOUT, UNDERSTAND, AND VOLUNTARILY AGREE TO THE ABOVE CONDITIONS OF ANY EMPLOYMENT THAT MAY BE OFFERED TO ME BY CONVERGYS OR ANY RELATED ENTITY."** Id. The line indicating where the applicant should sign was located directly beneath the provisions.

The dispute leading to this lawsuit arises from Plaintiffs' allegations that Defendants permitted Plaintiffs and other employees to work an undetermined amount of hours per work week for which they were not compensated. Plaintiffs further allege that Defendants were aware of the overtime hours that employees worked, but failed to try and compensate them or remedy the situation in any way.

Plaintiffs filed a Motion to Proceed as a Collective Action in July 2011, requesting that the Court certify this lawsuit as a class action and also requesting that the Court order Defendants to produce the names, addresses, telephone numbers, and social security numbers of potential opt-in plaintiffs. In August 2011, shortly after filing their response to the Plaintiffs' Motion, Defendants filed a Motion to Strike Plaintiffs' Collective Action Allegations.

3

II. **Analysis**

The parties dispute the validity of the employment application as a binding agreement, specifically the class action waiver. Defendants argue that the waiver is enforceable and effectively precludes the possibility of a collective action. However, Plaintiffs argue that the clause is invalid. Plaintiffs cite two primary reasons that the clause should be unenforceable. First, Plaintiffs argue that the employment application does not constitute a valid, binding contract between Plaintiffs and Defendants, and therefore, the class action waiver is not effective. Second, Plaintiffs contend that even if there is a valid agreement, public policy concerns weigh against upholding the class action waiver. These two issues are addressed below.

    A. **Class Action Waiver: Contractual Concerns**

Plaintiffs object to the validity of the class action waiver within the employment application for two reasons. First, Plaintiffs contend that the waiver is invalid because the Eleventh Circuit only recognizes class action waivers that appear in the context of an arbitration agreement. Second, Plaintiffs argue that even if class action waivers are enforceable outside of the arbitration context, the employment application in this case is not a valid contract, and therefore the waiver is not effective.

    1. **Non-Arbitration Setting for Class Action Waivers**

Using <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359 (11th Cir. 2005) as a primary example, Plaintiffs argue that courts have only enforced class

4

waiver provisions in the context of enforceable arbitration agreements under the Federal Arbitration Act. According to Plaintiffs, the reason that courts have only upheld class action waivers within the framework of arbitration agreements is because there is a trade-off: the possibility of bringing a class action is relinquished to take advantage of the simplicity, informality, and expedition of arbitration. *See* Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S. Ct. 1647 (1991). By upholding a class action waiver outside of the arbitration context, Plaintiffs contend that this trade-off is lost, and there is no reason to enforce the class action waiver.

While Plaintiffs are correct in stating that a vast majority of cases that address class action waivers do appear within the context of arbitration agreements, there is no logical reason to distinguish a waiver in the context of an arbitration agreement from a waiver in the context of any other contract. The trade-off argument advanced by Plaintiffs is unpersuasive. The validity of a class action waiver has nothing to do with the advantages of arbitration or some sort of trade-off. Instead, class action waivers are upheld because they are contractual provisions that do not affect any substantive rights. *See* Jenkins v. First Am. Cash Advance of Georgia, LLC, 400 F.3d 868, 878 (11th Cir. 2005) (determining that a class action waiver had no effect on the substantive rights of the parties and therefore the waiver was valid); Delano v. Mastec, Inc., 2010 WL 4809081 (M.D. Fla. Nov. 18, 2010) (finding that barring a class action does not prevent parties from vindicating their substantive rights under a statute).

Class action waivers have been called "litigation devices," more closely aligned with venue than with any substantive right.[2] Caley, 428 F.3d at 1378; Slawienski v. Nephron Pharm. Corp., 2010 WL 5186622 at *2 (N.D. Ga. Dec. 9, 2010); see also Brown v. Sears Holdings Mgmt. Corp., 2009 WL 2514173 at *4 (N.D. Ill. Aug. 17, 2009). As a litigation device, class action waivers are proper tools to be used by parties in contracting and bargaining. The court must leave the decision about allowing or forbidding participation in class action litigation in the hands of the contracting parties.

Class action waivers, like many other contractual terms, are proper subjects for contractual bargaining because there is no substantive right associated with class action litigation. Further, these waivers are not limited to the context of arbitration, which would unreasonably restrict parties from the freedom to contract in non-arbitration settings. Thus, the non-arbitration setting in this case does not automatically invalidate the class action waiver.

2. **Binding Contracts under State Law**

Plaintiffs argue that even if the Court finds that class action waivers are valid outside the context of an arbitration agreement, then the waiver in this case

---

[2] The Court acknowledges the Notice of Supplemental Authority (Doc. 69) in which Plaintiffs brought to the Court's attention the recent decision of the National Labor Relations Board ("NLRB") in D.R. Horton, Inc. and Michael Cuda, Case 12-CA-25764, Jan. 3, 2012. In Horton, the NLRB determined that a provision precluding employees from filing class action claims addressing wages infringed on their Section 7 rights under the NLRB Act. The Court reviewed the NLRB decision and finds that it does not meaningfully apply to the facts of the present case.

is unenforceable because the employment application in which the waiver appeared does not constitute a valid contract. Under Georgia law, "[a] definite offer and complete acceptance, for consideration, create a binding contract." Citizens Trust Bank v. White, 274 Ga. App. 508, 510, 618 S.E.2d 9, 11 (2005). In this case, Plaintiffs argue that the employment applications were insufficient to constitute an offer or acceptance. Plaintiffs contend that the applications did not specifically offer guaranteed employment, and therefore, no official contract was formed. Plaintiffs point to the lack of terms, directions, and instructions for Plaintiffs, as well as the lack of details, such as hourly wage or job description, as evidence that the application was not intended to create any contractual obligations. Plaintiffs also claim that the applications did not create the type of binding obligations necessary to establish the existence of sufficient consideration.

The Court disagrees with Plaintiffs. The employment applications meet the requirements of offer, acceptance, and consideration. Courts across the country, including the Supreme Court of the United States, have recognized that employment applications can constitute binding contracts. *See* EEOC v. Waffle House, 534 U.S. 279, 282-83, 122 S. Ct. 754 (2002) (interpreting a clause in an employment application as a valid and enforceable contractual obligation); Hadnot v. Bay, Inc., 344 F.3d 474, 477-78 (5th Cir. 2003) (determining that the application for employment and the responding offer of employment was sufficient to constitute a binding contract); Banks v. Remington College –BCL,

7

Inc., 2011 WL 4695921 at *2 (N.D. Ohio Oct. 6, 2011) (finding that the employee's application constituted an offer, the employer's decision to hire was the acceptance, and the continued employment constituted the consideration).

The cases cited by Plaintiffs as part of their argument that there was not sufficient consideration for the employment application to be a binding contract are distinguishable. In Saylor v. Wilkes, 613 S.E.2d 914 (W. Va. 2005), the court determined that the employer's promise to review the application was not sufficient to create an enforceable contract. However, in that case, there was no mutual assent, a quality which is easily established in the present case. Likewise, Geiger v. Ryan's Family Steak Houses, Inc., 134 F. Supp. 2d 985 (S.D. Ind. 2001) is distinguishable. In that case, the court found that merely considering an application was not enough to turn an arbitration agreement into a binding contract. However, there, the terms in the application submitted by the employee were dense and unclear. The court's determination that the contract should not bind the potential employee was based in part on the knowledge that the employee signed a document that he did not fully understand. Id. at 998-99. In Walker v. Ryan's Family Steak Houses, 400 F.3d 370 (6th Cir. 2005), the Sixth Circuit determined that an employer's promise to consider an employment application was not sufficient consideration to create a contract. However, in this case, there has been more than just the promise to consider an application. There was the application, the offer of employment, and continued at-will

employment. This more in-depth employment relationship distinguishes the case from Walker.

The Court is more convinced by the reasoning in Henry v. Pizza Hut of Am., Inc., 2007 WL 2827722 (M.D. Fla. Sept. 27, 2007). In that case, the court concluded that the plaintiff's argument that the agreement lacked consideration was unsupported by the facts. The court determined that the plaintiff's submission of an employment application and Pizza Hut's subsequent review of that application constituted consideration under modern contracts law. Id. at *5. *See also* Dunn v. Gordon Food Servs. Inc., 780 F. Supp. 2d 570, 574-75 (W.D. Ky. 2011) (upholding terms in an employment agreement because of the voluntary nature of the application, despite employee's low level education and the short amount of time given to read over the contractual provisions in the application); Bradford v. KFC Nat. Mgmt. Co., 5 F. Supp. 2d 1311, 1313-15 (M.D. Ala. 1998) (upholding the contractual terms in an employment agreement because the application was construed as a binding, enforceable contract). Based on the reasons above, the Court is convinced that the employment application in this case sufficiently demonstrates an offer, acceptance, and consideration.

Plaintiffs argue that even if the Court finds the requisite contractual elements of offer, acceptance, and consideration, the contract is unconscionable, and therefore, unenforceable. If a contract is formed under the influence of any of the generally applicable contract defenses – fraud, duress, or unconscionability –

9

the contract is invalid. Triad Health Mgmt. of Georgia, III, LLC v. Johnson, 298 Ga. App. 204, 209, 679 S.E.2d 785, 790 (2009).

Under Georgia law, unconscionability includes both procedural and substantive elements. Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves. Mullis v. Speight Seed Farms, Inc., 234 Ga. App. 27, 29, 505 S.E.2d 818, 820 (Ga. 1998). Procedural unconscionability takes into consideration factors like "age, education, intelligence, business acumen, and the presence or absence of a meaningful choice." Id. Substantive unconscionability, on the other hand, is determined by "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." Id. at 30, 505 S.E.2d at 820.

In this case, Plaintiffs both received some post-high school education. Plaintiff Cantrell attended a course at Durham Business College focused on accounting for small businesses, as well as several other seminars about owning a business. (Cantrell 29.) He owned his own business, PT Mac, from May 1998 until October 2002. (Cantrell 61.) Plaintiff Palmer attended Sonoma State University for over two years of post-high school education, including general education coursework and a paralegal studies program. (Palmer 96.) Palmer worked as a self-employed "Ebay Powerseller" from January 2002 until February 2007, selling merchandise online and negotiating with wholesalers, and she also

10

worked as an independent paralegal. (Palmer 95-96.) In short, Plaintiffs both had some degree of post-high school education and prior work experience.

In Caley, the Eleventh Circuit recognized that there is often bargaining disparity in the employment context, but clear terms and an indication of the importance of the policy and its terms can balance this disparity in bargaining power. 428 F.3d at 1377. In this case, while there may have been some disparity between the parties, Plaintiffs had business experience and education, and voluntarily completed the applications. Additionally, the terms of the contract were clear, and the bold print of the contractual language should have drawn Plaintiffs attention to the terms of the application. Therefore, the Court finds that the employment application is not procedurally unconscionable.

The Court also finds that the employment agreement is not substantively unconscionable. Plaintiffs argue that the agreement is unconscionable because Plaintiffs could not "opt-out" of the class action waiver without consequence. According to Plaintiffs, they had no options available to them if they chose to object to any of the contractual provisions contained in the application. However, Plaintiffs fail to take into consideration the voluntary nature of the employment application. Plaintiffs submitted the applications on their own volition, and without the threat of consequence if they chose not to submit the application. If Plaintiffs had any concern with the class action waiver, they could have attempted to negotiate with Defendants on that particular contractual provision or seek employment elsewhere. "An unconscionable contract is one abhorrent to good

11

morals and conscience. It is one where one of the parties takes a fraudulent advantage of another." Thomas v. T&T Straw, Inc., 254 Ga. App. 194, 195, 561 S.E.2d 495, 497 (Ga. 2002). The employment application in this case does not rise to the level of unconscionability.

In sum, the employment applications completed by Plaintiffs in this case constitute valid, binding contracts, as evidenced by offer, acceptance, and consideration. Additionally, the terms in the application are not unconscionable. Therefore, the employment agreement, including the class action waiver, is enforceable and binding on the Plaintiffs in this action.

### B. Class Action Waiver: Policy Concerns

Plaintiffs argue that even if the class action waiver is deemed to be a valid contractual provision, it should be nullified as against public policy. Plaintiffs primarily rely on Dale v. Comcast Corp., 498 F.3d 1216 (11th Cir. 2007), a case in which the Eleventh Circuit struck down a class action waiver because individual plaintiffs were unable to successfully litigate claims without the class action mechanism. However, this case is distinguishable from Dale.

In Dale, the defendant was Comcast Corporation ("Comcast"), a television service provider, and the plaintiffs were individual Comcast subscribers. Id. at 1217. The plaintiffs filed suit against Comcast under the Cable Communications Policy Act of 1984 ("the Act"), alleging that Comcast overcharged subscribers. Id. The district court dismissed the case against Comcast based on an arbitration provision and class action waiver signed by subscribers. However, the Eleventh

Circuit reversed the district court, determining that the class action waiver was invalid as against public policy.

One of the primary reasons cited by the Eleventh Circuit for determining the class action provision was invalid was the negligible amount of damages that the plaintiffs sought to gain if they were successful on their claims. Id. at 1220. The potential recovery was $10.56 for each individual plaintiff. Id. The Eleventh Circuit reasoned that "without the benefit of a class-action mechanism, the subscribers would effectively be precluded from suing Comcast for a violation of [the Act] because of the difficulty a single subscriber would have in obtaining legal representation in light of the small amount of damages at issue and the Cable Act's lack of a fee-shifting provision." Id. at 1224. If plaintiffs were unable to find an attorney willing to take their case and file an action against Comcast, the corporation could get away with illegal behavior unchecked. Id.

Additionally, the Dale court was concerned because the Cable Act did not contain a fee-shifting provision or an attorney's fees provision. Id. The court recognized that the automatic, or likely, award of attorney's fees would be sufficient incentive for an attorney to represent a client, even in the absence of a class action. Id. at 1223. In fact, the court acknowledged that class action waivers have been upheld in cases where the plaintiff brings an action under a statute that allows for an automatic or likely recovery of attorney's fees. Id. (citing Caley, 428 F.3d 1359; Jenkins, 400 F.3d 868; Randolph v. Green Tree Fin. Corp., 244 F.3d 814 (11th Cir. 2001)).

The distinction between Dale and the present case is evident. The potential recovery in Dale was extremely limited, which meant that a class action was necessary to ensure the vindication of plaintiffs' rights.[3] In this case, the amount of recovery is not so small as to completely preclude recovery on an individual basis. In the Complaint, Plaintiffs ask for all unpaid compensation, including all unpaid overtime wages, as well as liquidated damages, attorney's fees, expert witness costs, and costs of litigation. Unlike the $10.56 potential recovery in Dale, the damages requested in this case could easily reach an amount that merits an individual case by Plaintiffs against Defendant.

Further, Plaintiffs have asserted their claim under the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 201 *et seq.* Attorney's fees are mandatory under the FLSA. Section 206(b) provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 206(b). S*ee* Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 262 n. 34 ("Other statutes which are mandatory in terms of awarding attorney's fees

---

[3]  Courts have recognized the limited scope of the Dale decision based on the limited recovery that the plaintiffs in that case sought to gain on an individual basis. *See* Honig v. Comcast of Georgia I, LLC, 537 F. Supp. 2d 1277, 1287 (N.D. Ga. 2008) (noting that "a closer reading of Dale reveals that the Eleventh Circuit expressly limited the holding of Dale … [t]he Eleventh Circuit made clear that whether a class action waiver is enforceable depends entirely upon the unique facts and circumstances of the case"); Losapio v. Comcast Corp., 2011 WL 1497652 at *5 (N.D. Ga. Apr. 19, 2011) (noting that a class action suit was necessary in Dale because of the lack of attorney's fee and fee-shifting provisions in the statute at issue).

include the Fair Labor Standards Act …"); Dionne v. Floormasters Enter., Inc., --- F.3d ---, 2012 WL 104906 at *6 (11th Cir. Jan. 13, 2012) (citing Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1542 (11th Cir. 1985) for the proposition that "section 216(b) of the [FLSA] makes fee awards mandatory for prevailing plaintiffs").

Even if the recovery that Plaintiffs sought was a small or insignificant amount, which the Court does not believe that it is, the mandatory attorney's fees provision in the FLSA addresses Plaintiffs' argument that without a class action, they would be unable to access legal representation to assist them in pursuing a claim against Defendants. A statutory provision mandating attorney's fees adequately addresses the policy concerns that surround a case with small amounts of damages and the possibility of deceptive company policies going unchecked because of a lack of litigation.

III. **Conclusion**

In sum, the class action waiver to which Plaintiffs agreed in their employment application is a binding, valid contractual provision. No policy reasons exist that would nullify the waiver, and therefore, Plaintiffs effectively waived their right to bring a class action when they each signed an employment application with Defendant. As a result, the Defendants' Motion to Strike (Doc. 53) is granted and Plaintiffs' Motion to Proceed as a Collective Action (Doc. 42) is declared moot.

**SO ORDERED,** this 9th day of February, 2012.

                                       ***s/ Hugh Lawson***
                                       HUGH LAWSON, SENIOR JUDGE

ebr